62 F.3d 1429
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Mario Israel GASTELUM-MURGUIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vicente HERNANDEZ-VARGAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Adolfo ALVAREZ, Defendant-Appellant.
 Nos. 94-2172, 94-2176, 94-2178.
 United States Court of Appeals, Tenth Circuit.
 Aug. 8, 1995.
 
 1
 (D. N.M.) D.C. No. CR 93-654-JB.
 
 
 2
 AFFIRMED.
 
 
 3
 Before Anderson and Holloway, Circuit Judges, and Ellison,* Senior District Judge.
 
 
 4
 ORDER AND JUDGMENT**
 
 
 5
 ELLISON, Senior District Judge,
 
 
 6
 The issues on appeal in these three related cases are virtually identical.
 
 
 7
 The three defendants, Gastelum, Hernandez, and Alvarez were charged by indictment with possession with intent to distribute more than five kilograms of cocaine. All defendants pled not guilty and filed motions to suppress which were denied. After trial by jury all three defendants were found guilty.
 
 
 8
 On appeal, all defendants urge that the trial court was in error in denying the defendants' motions to suppress. The defendant Gastelum also urges that the court erroneously admitted identification testimony and improperly instructed the jury.
 
 Factual Background
 
 9
 The defendants were traveling from Los Angeles to Chicago on Amtrak Train No. 4. The train stopped in Albuquerque on November 17, 1993 where it was met by an interdiction detail made up of members of the Drug Enforcement Administration (DEA) and the Albuquerque Police Department (APD). The defendants left the train, went to the platform, and talked. DEA Special Agent Kevin Small entered the train from the rear to observe the sleeping cars while APD Detective Mark Barela entered the train from the front to observe the coach cars. Detective Barela advised Special Agent Small that in Car 413 he had observed two large Delsey suitcases in the overhead bin. Small proceeded to Car 413 and observed a large blue Delsey suitcase in the overhead bin above seat 34 and a black Delsey suitcase in the overhead bin above seats 11 and 12. Small determined that the suitcase above seat 34 was heavy. The agents believed that such placement of large suitcases in the overhead bin was unusual and that Delsey suitcases are used by drug smugglers because they are air-tight. Agent Small and Detective Barela left the train and advised Detective Samuel Candelaria of the suitcases.
 
 
 10
 Small reboarded the train after the majority of the passengers had returned to it. After noticing Alvarez leaning over seats 11 and 12, Small and Barela followed defendants Hernandez and Alvarez to the lounge car. Agent Small approached Alvarez, showed his credentials, and asked if he could speak to him. Alvarez apparently did not speak English so Small attempted to use Spanish. Ultimately another individual in the lounge car acted as a Spanish translator between Small and Alvarez. Small asked for his ticket, and Alvarez stated that Hernandez had his ticket. Small then joined the table where Hernandez was speaking to Detective Barela. Small asked to see his ticket and Hernandez handled Small two ticket stubs in the name of Alfredo Lara. They were one-way tickets purchased for cash on the day of departure. Hernandez consented to a search of his person for drugs. No drugs were found. Small returned to Alvarez who also consented to a search of his person for drugs. No drugs were found, but a folding knife was found which the agent retained.
 
 
 11
 The agents asked the two men if they would come upstairs and look at something. They proceeded to seats 11 and 12 in car 413. Hernandez identified as his two duffle bags which were on the floor in front of seats 11 and 12; he consented to a search of them. No drugs were discovered in this search. Special Agent Small asked Alvarez and Hernandez if the blue Delsey suitcase and a flowered suitcase in the overhead bin above their seats belonged to either of them. Both denied ownership of either bag. Upon inquiry all passengers in the vicinity of seats 11 and 12 denied that the bags belonged to any of them. Small and Barela left the area and advised Detective Candelaria that no one claimed the suitcases.
 
 
 12
 Candelaria then approached Gastelum and advised him that he was a police officer and asked if he could speak to him. Consent was given. Gastelum stated that he had boarded the train in Los Angels and was en route to Chicago. Gastelum produced a one-way ticket stub from Los Angeles to Chicago in the name of Alfredo Lara. He denied knowing Hernandez or Alvarez.
 
 
 13
 The detective asked about his luggage whereupon Gastelum went to seat 34 and took a red duffle bag from the overhead bin. The bag had been located in the bin next to the black Delsey. The duffle bag contained no contraband. Candelaria asked if the black Delsey bag was his and Gastelum responded that it was not. Gastelum consented to a search for luggage keys. None were found.
 
 
 14
 The officers requested the train attendant to make further inquiry of passengers as to ownership of the two Delsey bags and the soft flowered suitcase. No one came forward to claim them.
 
 
 15
 The team carried the two Delsey suitcases and the flowered bag to the train platform where a drug dog alerted to all three suitcases. The team returned to the car and placed the three defendants under arrest.
 
 Disposition
 Standard of Review
 
 16
 "When reviewing a district court's denial of a motion to suppress evidence, we accept the district court's factual findings and determinations of witness credibility unless they are clearly erroneous[,] ... view[ing] the evidence in the light most favorable to the district court's ruling." United States v. Flores, 48 F.3d 467, 468 (10th Cir. 1995). "The ultimate determination of reasonableness [of the seizure under the Fourth Amendment], however is a conclusion of law that we review de novo." United States v. Pena, 920 F.2d 1509, 1514 (10th Cir. 1990).
 
 Motions to Suppress
 
 17
 All defendants filed motions to suppress, questioning the validity of the search and seizure on the train, and their ultimate arrest. The trial court characterized the initial encounter as an investigatory stop which required the officer to have only "specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime." The trial court further found that "under the totality of the circumstances, the fact that the three defendants were travelling under the same name on the same ticket, and when they denied knowing each other, that gave rise to reasonable articulable specific facts which gave a reasonable suspicion that ... at least a crime was being committed." Further, since defendants denied ownership of the bags, they did not have a reasonable expectation of privacy in them, and had no standing to object to the seizure or search of the bags.
 
 
 18
 This court has recognized three basic types of encounters[1] between individuals and police: voluntary cooperation, Terry investigative stops and arrests. A consensual encounter involves the voluntary cooperation of a citizen with noncoercive questioning. Such are not considered seizures within the meaning of the Fourth Amendment. United States v. Morgan, 936 F.2d 1561, 1566 (10th Cir. 1991).
 
 
 19
 A Terry investigative stop is a brief, nonobtrusive detention during preliminary questioning or a frisk of weapons. Terry v. Ohio, 392 U.S. 1, 21-22 (1968). Such stops constitute seizures which must be supported by a reasonable suspicion that a person has committed or is committing a crime. Id.
 
 
 20
 The third type of encounter is an arrest, which is characterized as highly intrusive and involves detention. An arrest must be supported by probable cause to believe that a person has committed or is committing a crime. U.S. v. LaBoy, 979 F.2d 795, 798 (10th Cir. 1992) (citing United States v. Morgan, 936 F.2d at 1566).
 
 
 21
 A review of the applicable law convinces us that the district court analyzed the motion to suppress correctly. The District Court's factual findings are not clearly erroneous. The evidence demonstrated that Delsey bags were used by drug dealers because of their air-tight construction and that it was highly unusual for them to be placed in overhead bins. Although not specifically set forth as a finding, the evidence was that the three defendants had seats in close proximity to the Delsey bags. Hernandez and Alvarez denied knowing Gastelum and he denied knowing them. All three tickets, however, had been purchased in the name of one individual, Alfredo Lara.
 
 
 22
 Since the facts as found by the trial court are not clearly erroneous we must accept them in our de novo analysis of the seizure under the Fourth Amendment. United States v. Pena, 920 F.2d at 1514. Based on these facts, the trial court was correct in finding the seizure constitutionally sound as an investigative stop. The facts as determined by the district court establish a reasonable suspicion that the defendants had committed or were committing a crime. The trial court's denial of the motion to suppress any statements or evidence obtained by the seizure is affirmed.
 
 
 23
 Defendants also contest the constitutionality of the arrest. The arrest following the investigatory stop was made after the officers had taken the three bags to the train platform where a dog trained to detect narcotics alerted to all three suitcases. This event, coupled with the reasonable suspicion that the defendants were committing a crime clearly constituted probable cause sufficient to justify the warrantless arrest. The contents of the three bags and the statements of the defendants were properly admitted in evidence.
 
 
 24
 In this analysis we are not unmindful of our holding in United States v. Little, 18 F.3d 1499 (10th Cir. 1994). However, in that case the issue was whether under the totality of the circumstances a seizure had taken place. Here there is no real dispute; the district court held that a seizure had taken place, and the issue is whether it was constitutionally valid under the Fourth Amendment.
 
 
 25
 Motion to Suppress Photographic Identification
 
 
 26
 Appellant Gastelum also sought to suppress evidence of a photographic array containing his picture. The photographs had been submitted to Faye Williams, the Amtrak ticket agent who sold the three tickets in the name of Alfredo Lara. She identified Gastelum as the individual who purchased the three tickets.
 
 
 27
 Evidence introduced at the suppression hearing established that Ms. Williams had seen Gastelum for 30-45 minutes and talked to him for 5-6 minutes. Ms. Williams described the man who purchased the tickets as being a short, middle-aged Hispanic man who wore a mustache.
 
 
 28
 This description was given to Detective Candelaria before he composed the array. Six photographs of persons who were similar in appearance to that description were presented to Ms. Williams. He told her that the photographs may or may not contain the picture of the man who purchased the tickets. Ms. Williams identified Gastelum's photograph as the man who had purchased the tickets. The district judge found that the array was of persons who appear to be persons of similar appearance, the opportunity to observe the defendant was extensive, and the ticket agent accurately described the defendant before being presented with the array of photographs.
 
 
 29
 The trial court was not clearly erroneous in its findings. It properly considered the totality of the circumstances. See United States v. Sanchez, 24 F.3d 1259, 1262 (10th Cir. 1994). When considered on a de novo standard and accepting the trial court's findings, it is clear that the admission of the photographic evidence did not violate due process and was constitutionally reliable.
 
 
 30
 The trial court's denial of the motion to suppress identification is affirmed.
 
 Propriety of Jury Instruction 7
 
 31
 In this instruction the court instructed as follows:
 
 
 32
 Title 21, United States Code, Section 841(a)(1), makes it a crime for anyone knowingly or intentionally to possess a controlled substance with intent to distribute it. Cocaine is a controlled substance within the meaning of the law.
 
 
 33
 * * *
 
 
 34
 * * *
 
 
 35
 For you to find the defendant Vicente Hernandez-Vargas guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
 
 
 36
 First: That the defendant knowingly possessed a controlled substance;
 
 
 37
 Second: That the substance was in fact cocaine; and,
 
 
 38
 Third: That the defendant possessed the cocaine with the intent to distribute it.
 
 
 39
 * * *
 
 
 40
 * * *
 
 
 41
 To "possess with the intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.
 
 
 42
 The government must prove beyond a reasonable doubt that the defendants knew they were in possession of a controlled substance, but need not prove they knew which particular controlled substance was involved.
 
 
 43
 At the instruction conference the defendants urged that the last paragraph changed the charge to a crime of general intent rather than one of specific intent. The trial court overruled the objection. Defendant, on appeal urges that this instruction constitutes an improper amendment to or variance from the indictment. This specific objection was not made at trial. Therefore, in the absence of a clear showing of plain error the objection cannot be raised on appeal. Fed.R.Crim.P. 30, 52(b); United States v. Swafford, 766 F.2d 426, 429 (10th Cir. 1985). Since the instruction was a correct statement of law as applied to the evidence in the case, we do not find plain error. Id.
 
 
 44
 The judgment of the trial court is affirmed.
 
 
 
 *
 The Honorable James O. Ellison, Senior District Judge, United States District for the Northern District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 It is clear the trial court's analysis was of these three types of encounters although he obviously misspoke when he referred to a Terry stop and an investigative stop as two different types of encounters. The standard to be applied is the same