UNITED STATES of America, Plaintiff–Appellant,

v.

Patrick Lynn MAHER, Defendant–Appellee.

No. 90–8012.

United States Court of Appeals, Tenth Circuit.

Dec. 7, 1990.

---

William M. McKellar of Lathrop, Rutledge & Boley, P.C., Cheyenne, Wyo., for defendant-appellee.

Before ANDERSON and BRORBY, Circuit Judges, and BRIMMER,* District Judge.

BRORBY, Circuit Judge.

The United States (the Government) appeals the grant of a motion to suppress evidence. The motion was granted following the trial court's determination that defendant Patrick Lynn Maher's (Maher, or appellee) written consent to search was tainted by his illegal detention. Because we find that the police had probable cause to arrest the defendant, the grant of the motion to suppress is reversed.

*Facts*

The facts of this case are exhaustively set forth in the district court's Memorandum Opinion and Order, published as *United States v. Maher*, 724 F.Supp. 1348 (D.Wyo.1989). Only those facts useful in understanding this appeal are repeated here.

On November 24, 1988, Maher was traveling through Wyoming with his children when he experienced car trouble on Interstate 80 near Lyman. Maher's vehicle was a 1975 Dodge van pulling a homemade flatbed trailer. He arranged for a tow to a motel in Lyman, where he rented a room for the evening.

Shortly before noon the next morning, Officer Walser of the Lyman Police Department (LPD) noticed Maher working on his van. Walser ran a routine National Crime Information Center (NCIC) check on the separate license plates attached to the van and trailer. The trailer's plate registered an NCIC "hit," which indicated the plate belonged to a yellow 1977 Chevrolet Camaro that had been reported stolen in California.

Patty Merkamp Stemler, U.S. Dept. of Justice, Washington, D.C. (Richard A. Stacy, U.S. Atty., and John R. Barksdale, Asst. U.S. Atty., Cheyenne, Wyo., with her on the brief) for plaintiff-appellant.

* The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

Walser approached Maher, asked for his driver's license and informed him that the trailer's license plate had been reported stolen. Maher stated his driver's license had been stolen and he had no other photo identification. Walser checked Maher's name and date of birth and found that he did have a valid California driver's license. He also learned there were no outstanding warrants for him in either California or Wyoming.

Backup officers arrived shortly after Walser confronted Maher. Cursory searches of the van and trailer were conducted at this time, with Maher's oral consent. Nothing incriminating was found, and those searches are not part of this appeal. In response to questioning, Maher produced the van's registration, but explained that the bill of sale for the trailer was at his California home. Maher told the officers he had bought the trailer from a man named Tommy in California and explained where Tommy's house was located. At some time during this exchange, Walser made a cursory and unsuccessful search for the trailer's vehicle identification number (VIN).

At this point in the investigation, Walser could have charged Maher with having an unregistered trailer and possession of a stolen license plate. Walser decided to impound the trailer, suspecting that the trailer itself might be stolen. Walser testified that it was the department's policy to impound stolen vehicles or vehicles with stolen license plates attached to them.[1] Walser informed Maher that the trailer was going to be impounded.[2]

At 1:10 p.m., Walser and Maher arrived at the police station, where Walser read Maher his *Miranda* rights, asked if he understood, and asked if he wanted to speak with a lawyer. Maher answered that he understood his rights and did not wish to speak to a lawyer. In an ultimately fruitless effort to verify Maher's story about how he obtained the trailer, Walser began making phone calls to law enforcement agencies in the southern California area where Maher resided. Meanwhile, officers at the private garage where Maher's trailer was impounded removed the trailer's tailgate and tarp and found its payload consisted of twenty to twenty-five wooden boxes. One of the officers called to tell Walser that he wanted Maher to sign a consent form before searching the trailer. Maher signed the consent form at the station.

After being informed by Walser that a consent form had been obtained, five officers and a drug-sniffing dog began to search the trailer. Among less noteworthy items, the search revealed plastic explosives, five military mine activators and a coil of military safety fuse.

Ultimately, after consulting the county attorney, Walser issued Maher a citation for improper registration and allowed him to post a $50 bond. On July 20, 1989, Maher was indicted for concealing and storing stolen explosive materials in violation of 18 U.S.C. § 842(a) and § 842(h), and for transporting those same materials in interstate commerce in violation of 18 U.S.C. §§ 842(a)(3)(A) and 844(a).

Maher subsequently filed a motion to suppress the explosives seized during the search of the trailer.

### District Court's Findings

In granting Maher's motion to suppress, the district court held, *inter alia:* Maher was seized without probable cause; his detention could not be justified as voluntary, or as a *Terry* stop; impoundment of the trailer was illegal and pretextual; and

---

1. The Lyman Police Department impoundment policy reads in pertinent part:
 1. When to impound:
 a. Vehicles are impounded for the following purposes only:
 . . . .
 3. As evidence of the commission of a crime.
 4. When a vehicle is in violation of the state of Wyoming laws.

 5. When a stolen vehicle is recovered. *Maher,* 724 F.Supp. at 1351 n. 1.

2. Before Maher and the officers left the motel, the officers confiscated a handgun, of which Maher had informed them, from Maher's motel room. Neither Maher's possession of the gun, nor the officers' seizure thereof, is a subject of this appeal.

Maher's written consent to the search of the trailer was vitiated by the illegal detention, with no intervening cure. *Maher*, 724 F.Supp. at 1362.

The Government subsequently filed a motion for reconsideration of the court's memorandum opinion and order on the motion to suppress, essentially challenging the court's refusal to find probable cause. The court denied the motion and the Government's timely appeal followed.

### Standard of Review

Factual findings of the district court are not disturbed on appeal unless clearly erroneous. *See United States v. Rivera*, 867 F.2d 1261, 1262–63 (10th Cir.1989). We review the evidence in a light favorable to the district court's determinations. *See, e.g., United States v. Medlin*, 842 F.2d 1194, 1198 (10th Cir.1988); *United States v. Obregon*, 748 F.2d 1371, 1376 (10th Cir. 1984).

Legal conclusions are reviewed de novo. *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir.1988).

### Issues on Appeal

The Government asserts on appeal that suppression of the evidence was erroneous because Maher's presence at the station was lawful for any one of three reasons. The Government argues: 1) Maher voluntarily consented to go to the station and was neither "seized" nor "arrested"; 2) even if he was arrested, the arrest was supported by probable cause to believe the trailer was stolen; and 3) custodial arrest is authorized under Wyoming law for possessing a stolen license plate and hauling an unregistered trailer. If any of these three contentions is correct, the Government asserts, then Maher was lawfully present in the police station and his written consent to the search was not tainted. The evidence would therefore be admissible. The Government also argues the trailer was lawfully impounded.

Because a finding of probable cause would be dispositive, we turn first to that issue. We assume for the purpose of analysis that Maher was arrested and tak-

en to the police station without his voluntary consent. As noted by the district court, such an arrest " 'trigger[s] the full protection of the fourth and fourteenth amendments.' " *Maher*, 724 F.Supp. at 1361 (quoting *Hayes v. Florida*, 470 U.S. 811, 816, 105 S.Ct. 1643, 1646, 84 L.Ed.2d 705 (1985)).

### Probable Cause to Arrest

The Government argues that Maher's arrest was supported by probable cause to believe Maher was in possession of stolen goods, including the trailer and license plate. The Government further argues that warrantless arrests for both felonies and misdemeanors are authorized under Wyoming law when based on probable cause. Maher argues the police did not have probable cause to believe the trailer was stolen. Although Maher concedes possession of a stolen license plate, he contends that arrest for that misdemeanor offense is not valid under Wyoming law.

 The constitutional validity of a warrantless arrest depends on whether the arresting officer had probable cause. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir.1985). Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *Matthews*, 615 F.2d at 1284. Although it is not necessary that the officer possess knowledge of facts sufficient to establish guilt, *Holt v. United States*, 404 F.2d 914, 919 (10th Cir.1968), *cert. denied*, 393 U.S. 1086, 89 S.Ct. 872, 21 L.Ed.2d 779 (1969), mere suspicion is insufficient to establish probable cause, *Henry v. United States*, 361 U.S. 98, 104, 80 S.Ct. 168, 172, 4 L.Ed.2d 134 (1959); *Matthews*, 615 F.2d at 1284. We recognize that probable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police offi-

cer. *United States v. Lopez,* 777 F.2d 543, 551 (10th Cir.1985); *United States v. McCormick,* 468 F.2d 68, 73 (10th Cir. 1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973).

We apply these standards to the facts available to the officers at the time of Maher's detention. The facts concerning Maher's trailer are subject to some dispute. The Government, for example, asserts the trailer "looked like a U–Haul trailer that had been painted, possibly to conceal its ownership." The Government contests the trial court's contrary conclusion that the trailer was in fact homemade, urging that "there is no support in the record for this finding." In light of conflicting statements by the officers themselves,[3] however, we are unable to find clear error in that determination. We must accept the trial court's factual findings unless they are clearly erroneous. *Rivera,* 867 F.2d at 1262–63. The trailer's alleged resemblance to a U–Haul therefore can not contribute to a finding of probable cause on appeal.

The Government also emphasizes that the officers were unable to locate a VIN upon cursory inspection of the trailer. VINs are usually imprinted on the tongue of a trailer, and the officers noted that the trailer's original tongue had apparently been replaced. The Government conceded, however, that VINs are often absent on homemade trailers, and that such absences are not suspicious. 724 F.Supp. at 1356–57 n. 8. We must therefore concur with the trial court's finding of "no evidence that a reasonable police officer would have found this absence suspicious." *Id. Cf. United States v. Gonzalez,* 763 F.2d 1127, 1131 n. 2 (10th Cir.1985) (strong aroma of deodorizer rejected as factor in probable cause, where officer was equivocal as to its significance).

Uncontested, however, are the following facts, available to the officers at the time of Maher's detention: the trailer bore a stolen license plate; the trailer was unregistered; Maher was carrying no ownership documents for the trailer; and Maher was unable to provide a complete name or address of the person who allegedly sold him the trailer. The trial court considered this evidence and stated "the facts were such that a reasonable officer would not have concluded there was probable cause to believe a felony had been committed by Maher." 724 F.Supp. at 1359. We disagree, and hold that this combination of facts is legally sufficient to establish probable cause.

The district court specifically addressed only one of these facts, stating "[t]he fact that Maher could not produce ownership documents would certainly not give rise to probable cause to believe the trailer was stolen." 724 F.Supp. at 1356. We agree that taken alone, the lack of ownership documents does not support probable cause. However, the trial court failed to appreciate the combined weight of the other facts available to the officers.

Most significantly, the trailer bore a stolen license plate. That the trailer's license plate was stolen, and not merely expired, or taken, for example, from another vehicle owned by Maher, is itself highly suspicious. Furthermore, the trailer was unregistered. We agree with the Government's suggestion that "[a] person who makes a legitimate purchase of a car or trailer and believes that he has good title will normally register the vehicle." We have previously found misrepresentation of registration to be a contributing factor in the probable cause analysis. *See United States v. Matthews,* 615 F.2d 1279, 1284 (10th Cir.1980) (defendant produced an apparently altered registration form for a Chevrolet, although the vehicle was a Ford). Under these facts, non-registration, even though candidly acknowledged, contributes to the finding of probable cause. Finally, we think Maher's failure to credibly identify the trailer's previous owner could reasonably fuel the officers' doubts as to Maher's ownership, especially in light of Maher's inability to produce a legal title or bill of sale for the trailer.

We recognize that the district court found certain facts to mitigate against a

---

**3.** Two policemen, including Officer Walser, independently wrote the word "homemade" when describing the make of the trailer on police department forms. 724 F.Supp. at 1356–57 n. 8.

finding of probable cause. Specifically, the court noted that the officers knew Maher was not under warrant in either California or Wyoming, that Maher's story was consistent, and that Maher gave no false or misleading information or documentation. Although the court found "Officer Walser was given information which could lead only to dispelling his suspicions," we believe he simply was not given enough to enable him to conclude that the trailer was probably not stolen.

The combined weight of the stolen license plate, the trailer's unregistered status, and Maher's inability either to identify the trailer's previous owner or to produce ownership documents enables this court to conclude that the facts and circumstances here within the officers' knowledge are " 'sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar,* 338 U.S. at 175–76, 69 S.Ct. at 1304 (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). The officers, therefore, had probable cause to arrest Maher.

The Government further argues that Maher's arrest, based on probable cause, was legal under Wyoming law whether the offense was technically a felony or a misdemeanor.[4] We agree. Wyoming law authorizes warrantless arrests where an officer has probable cause to believe that a felony, Wyo.Stat. § 7–2–103(a)(ii) (1977), or a misdemeanor, Wyo.Stat. § 7–2–103(a)(iii) (1977), has been committed.[5] The actual dollar value of the trailer is therefore irrelevant.

Having found that the officers here possessed probable cause to believe the trailer

was stolen, and thus to arrest Maher, it is unnecessary to consider the Government's contention that Wyoming law would permit custodial arrest for possessing a stolen license plate and hauling an unregistered trailer. It is likewise unnecessary to address Maher's contention that he did not voluntarily consent to go to the police station.

### Impoundment

▪ The Government also challenges the trial court's holding that impoundment of the trailer was an unlawful seizure that further tainted Maher's written consent. The Government argues that probable cause to believe the trailer was stolen empowered the officers to seize it without a warrant. We agree.

Having rejected the Government's assertion of probable cause to believe the trailer was stolen, the trial court mistakenly concluded that the officers' decision to impound the trailer was unreasonable. Having found the facts in this case to warrant the officers in the belief that the trailer was probably stolen, we likewise hold the impoundment of the trailer was reasonable. The impoundment was also permissible under Lyman Police Department Procedures.[6] Although those procedures allow the vehicle owner to make arrangements to secure the vehicle so that impoundment is not necessary, see *Maher,* 724 F.Supp at 1351 n. 1, we believe that provision is not applicable where the vehicle is itself evidence of crime. *Cf.* 3 W. LaFave, *Search and Seizure* § 7.3(a) (2d ed. 1987 & Supp.1991).

The trial court also analyzed the subjective intent of the officers in reaching the decision to impound the trailer. Such analysis is inappropriate where the officers have probable cause to believe the trailer is

---

4. Under Wyo.Stat. § 6–3–403:

 (a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:
 (i) A felony ... if the value of the property is five hundred dollars ($500.00) or more; or
 ....
 (iii) A misdemeanor ... if the value of the property is less than five hundred dollars ($500.00).
 Wyo.Stat. § 6–3–403(a)(i)–(iii) (1977).

5. The relevant provision of Wyoming law authorizes warrantless arrest for a misdemeanor when the person to be arrested, unless immediately arrested, "[w]ill not be apprehended." Wyo.Stat. § 7–2–103(a)(iii)(A) (1977). Because Maher was a nonresident traveler in Wyoming at the time of his arrest, we find this requirement to have been met, notwithstanding the arguable condition of his van.

6. *See supra* note 1. Each of the excerpted provisions applies to the trailer under these facts.

stolen. The court's analysis of pretext, as well as the authority cited in support thereof, *see, e.g., Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *State v. McDaniel,* 156 N.J.Super. 347, 383 A.2d 1174 (1978), applies to inventory searches not based upon probable cause. The search of Maher's trailer was not an inventory search, a "routine administrative caretaking function[ ]," *South Dakota v. Opperman,* 428 U.S. 364, 370 n. 5, 96 S.Ct. 3092, 3097 n. 5, 49 L.Ed.2d 1000 (1976), but rather an investigative search pursuant to probable cause and written consent. Just as the officers had probable cause to arrest Maher for possession of a stolen trailer, they had probable cause to impound the trailer and to search it without a warrant, either on the spot or after the vehicle's seizure. *See, e.g., United States v. Johns,* 469 U.S. 478, 484–86, 105 S.Ct. 881, 885–86, 83 L.Ed.2d 890 (1985); *Chambers v. Maroney,* 399 U.S. 42, 46–52, 90 S.Ct. 1975, 1978–79, 26 L.Ed.2d 419 (1970). Even if the officers were hoping to find illegal drugs in Maher's trailer, as the district court suspected, such a subjective intent would not invalidate the otherwise legal impoundment because we apply an objective standard in evaluating fourth amendment activity. *Cf. United States v. Guzman,* 864 F.2d 1512, 1517 (10th Cir.1988) (adopting an objective standard of inquiry into allegedly pretextual stops that asks whether under the same circumstances a reasonable officer would have made the stop in the absence of an invalid purpose). Probable cause to believe the trailer was stolen provides the officers a valid purpose in impounding the trailer.

The impoundment was reasonable and, viewed objectively, can not provide a basis for invalidating the search of the trailer pursuant to probable cause and written consent.

### Validity of Written Consent

Maher did not argue before the district court that his written consent was itself invalid for reasons other than the alleged illegality of his detention, although the issue of the independent validity of Maher's written consent fairly appears in Appellee's brief to this court. Because the probable cause to believe the trailer was stolen here validates Maher's arrest, as well as the seizure and search of the trailer, however, we need not consider the issue of consent. We simply note that our cases relied on by the district court to invalidate defendant's written consent, *see United States v. Recalde,* 761 F.2d 1448 (10th Cir.1985); *United States v. Gonzalez,* 763 F.2d 1127 (10th Cir.1985), were expressly premised on the lack of probable cause. *See, Recalde,* 761 F.2d at 1452; *Gonzalez,* 763 F.2d at 1131. We further note that, consistent with the protections of the fourth and fourteenth amendments, Maher was properly informed of his *Miranda* rights upon his arrival at the police station. *Maher,* 724 F.Supp. at 1351.

### Conclusion

Because Maher's arrest was based on probable cause, the written consent signed by Maher was not tainted by illegal detention, or by illegal seizure of the trailer. There being no other reason in law to suppress the fruits of the legal search, the order of the district court granting the Motion to Suppress must be REVERSED. This matter is REMANDED to the district court for further proceedings consistent with this opinion.