43 F.3d 1484
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
William Taylor CAUDILL, Defendant-Appellant.
 No. 93-2308.
 United States Court of Appeals, Tenth Circuit.
 Dec. 16, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before ANDERSON and LOGAN, Circuit Judges, and SAFFELS, District Judge.[2]
 
 
 2
 Defendant William Taylor Caudill appeals the denial of his motion to suppress evidence allegedly obtained in violation of his Fourth Amendment rights. Defendant entered a conditional guilty plea to charges of mail theft, in violation of 18 U.S.C. 1708. On appeal he argues that (1) postal authorities lacked probable cause to arrest him; (2) postal authorities violated his Fourth Amendment rights when they searched him after the arrest; (3) he has standing to challenge the search of the Mesa Airlines office; and (4)his confession was obtained in violation of his right to counsel and was tainted by postal inspector misconduct.
 
 
 3
 In reviewing denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous. The ultimate determination of reasonableness, however, is a legal conclusion that we review de novo. United States v. Anderson, 981 F.2d 1560, 1566 (10th Cir.1992).
 
 
 4
 * Following a series of lost express mail pieces from the Gallup, New Mexico, Post Office, United States Postal Service inspectors initiated an investigation. The inspectors determined that the lost items had been routed from the post office to the Gallup Airport where Mesa Airlines routinely transported express mail to Phoenix. Postal inspectors determined that defendant, a Mesa Airlines employee, had signed the manifests or bills of lading accepting approximately six express mail packages since February 1, 1993, all of which were subsequently reported lost. Although other Mesa Airlines employees also accepted delivery of express mail, none of those items had been lost; thus, the inspectors focused their investigation on defendant.
 
 
 5
 The inspectors prepared two express mail pouches for shipment through the Gallup Airport from the Gallup Post Office. Each pouch contained a number of express mail pieces, including one control piece equipped with a battery-operated electronic monitoring device and containing a $50 bill. An inspector initialed the batteries to facilitate later identification and recorded the serial numbers of the money. The monitoring device transmitted an intermittent beep that allowed the inspectors to monitor its location; if opened, the intermittent beep became faster, indicating alarm status.
 
 
 6
 The postal inspectors placed these express mail pouches into the mail stream on March 15, 1993. Defendant was scheduled to be the only Mesa Airlines employee on duty that evening. His responsibilities included receiving express mail, and closing and locking the terminal office. A post office employee delivered the pouches to the airport, and the inspectors followed. Postal inspectors set up surveillance at the airport, watching at least four possible exits.[3] They observed various airport employees turn off the lights in their work areas and leave the terminal building. Finally, the only lights on in the terminal building were in the Mesa Airlines area and the FAA office at the opposite end of the building.[4]
 
 
 7
 Thereafter, one of the monitors briefly went into alarm status. The transmitter was then disabled, apparently by removing the battery. Within a short time, the lights went out at the Mesa Airlines office and defendant left the terminal building. As he got into a car and started to drive away, the inspectors blocked his exit and arrested him.
 
 II
 
 8
 The threshold issue is whether the postal inspectors had probable cause to arrest defendant as he attempted to leave the airport parking lot. Beck v. Ohio, 379 U.S. 89, 95-97 (1964) (warrantless arrest must be supported by probable cause). "Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." United States v. Maher, 919 F.2d 1482, 1485 (10th Cir.1990) (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (other citations omitted)). Probable cause is a fact-driven inquiry that takes into account the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230 (1983).
 
 
 9
 We review the information and observations available to the postal inspectors at the time of defendant's arrest within this framework. The following facts are uncontested: defendant signed the manifest for the lost express mail packages; he had a criminal record; he was working alone at Mesa Airlines that night with responsibility to close the office; all other persons (except FAA personnel) who worked in the terminal building had left when the monitor went into alarm mode; shortly thereafter the lights in the Mesa Airlines office went out and defendant left the terminal building.
 
 
 10
 Defendant argues that because the postal inspectors did not know what he looked like and did not surveil all the exits, they lacked probable cause to arrest him. He contends that it is conceivable that another person actually opened the express mail pouches, set off the control mail monitor, and surreptitiously exited from the unattended door.[5] However, "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." Hill v. California, 401 U.S. 797, 804 (1971) (reasonable but mistaken identity); see also United States v. Morgan, 936 F.2d 1561 (10th Cir.1991), cert. denied, 112 S.Ct. 1190 (1992).
 
 
 11
 We agree with the district court that all of these facts taken together would have led "a prudent, cautious, trained police officer" to conclude there was probable cause to arrest the person leaving the Mesa Airlines office. Maher, 919 F.2d at 1485-86. The possibility that another individual exited the terminal through the freight and baggage area does not undermine probable cause, because the record established the improbability of that alternative. Agent Scholl's testimony indicated that the configuration of the fencing at the airport was such that anyone leaving through that unattended area would have ultimately been observed attempting to leave the airport grounds.
 
 III
 
 12
 After defendant's arrest the inspectors searched defendant's person for weapons and used his keys to re-enter the terminal building. When the inspectors emptied defendant's pockets they found the two $50 bills, part of the monitoring device, and two small batteries with the identifying scratches. The postal inspectors read defendant his Miranda rights and he signed a waiver of those rights. The postal inspectors then thoroughly searched the terminal for the missing packages. Defendant ultimately revealed the location of four express mail packages and made a written statement admitting his involvement.
 
 
 13
 Defendant concedes that we need not reach the issue whether postal inspectors had probable cause to search his person if there was probable cause for the arrest, as we have determined. Defendant argues, however, that he has standing to contest the search of the Mesa Airlines office and the evidence found there must be suppressed.
 
 
 14
 To successfully claim Fourth Amendment protection in property, a person must have "a legitimate expectation of privacy in the invaded place." Rakas v. Illinois, 439 U.S. 128, 143 (1978). The record does not contain any substantial evidence that defendant had a reasonable expectation of privacy in his workplace. Defendant's possession of the keys coupled with his responsibility to lock the office that evening reflect his job duties rather than any reasonable expectation of privacy in that portion of the terminal building. In addition, the prompt arrival at the terminal building of defendant's supervisor who authorized the search, compel us to agree with the district court that defendant lacked standing to challenge the search of the Mesa Airlines office.
 
 IV
 
 15
 Defendant finally asserts that misconduct by the postal inspectors tainted the validity of the Miranda warning, the signed waiver, or the confession. Defendant acknowledged receiving the Miranda warning, admitted that he received no promises when he signed the written waiver or later--except that his cooperation would be brought to the attention of the prosecutor. Although defendant also asserted that he requested an attorney, the district court found his testimony was not credible. Our examination of the record reveals no misconduct that would preclude introduction of the evidence of his self-incriminating statements.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Dale E. Saffels, Senior United States District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [3]
 One postal inspector acknowledged that a garage door-sized freight and baggage door was not directly surveilled, but testified that because of the airport terminal building location and surrounding fence, anyone using those exits would have been noticed
 
 
 [4]
 The record does not indicate the distance of the Mesa Airlines office from the FAA office
 
 
 [5]
 Defendant also notes that the postal inspectors did not know the identity of the persons who left the terminal building before he closed the Mesa Airlines office. That is immaterial; the control mail had not yet gone into alarm mode