78 F.3d 597
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Stefan N. REISS, Plaintiff-Appellant,
v.
M.T. LUCHETTA, Defendant-Appellee.
 No. 94-1489.
 United States Court of Appeals, Tenth Circuit.
 Feb. 28, 1996.
 
 Before ANDERSON, HENRY, and BRISCOE, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Plaintiff-appellant Stefan Reiss appeals the district court's grant of summary judgment to the defendant-appellee Mario Luchetta, a Denver police officer. The district court held that Officer Luchetta was entitled to qualified immunity from Mr. Reiss's false arrest claim under 42 U.S.C.1983. We exercise jurisdiction under 28 U.S.C. 1291, reverse the district court's order, and remand the case for proceedings consistent with this opinion.[2]
 
 I. BACKGROUND
 
 2
 On August 23, 1991, during a concert at Red Rocks City Park, Officer Luchetta arrested Mr. Reiss and charged him with three municipal offenses: disorderly intoxication, providing false information, and interfering with a police investigation. The Denver City Attorney's Office eventually dismissed the charges, and Mr. Reiss filed this Section 1983 action alleging that he had been subjected to an unreasonable arrest in violation of the Fourth Amendment.
 
 
 3
 The case proceeded to trial, where the parties presented conflicting testimony regarding the events leading up to Mr. Reiss's arrest. Mr. Reiss testified that, in the early evening of August 23, 1991, as he was walking away from the amphitheater at Red Rocks City Park, he noticed police officers dragging an obviously intoxicated man up a roadway. Mr. Reiss said that he was concerned that the man needed medical attention.
 
 
 4
 According to Mr. Reiss, about ten to fifteen minutes later, he saw the same man lying in the back of a police van. Again, Mr. Reiss testified, he was concerned about the man's medical condition. He approached the rear of the police van and leaned against a second van, which was parked immediately behind it. Mr. Reiss stated that he stayed in the same spot for about fifteen minutes. He observed two officers--Officer Luchetta and Denver Police Officer Michael Elbeck--writing a ticket and inspecting the drunken man's wallet. Mr. Reiss said that he did nothing to attract the officers' attention.
 
 
 5
 Mr. Reiss testified that eventually "Officer Luchetta turned around and he saw me and he said, What the fuck are you looking at, asshole.' " Aplt.App. at 28. Then, "[A]nother officer [Officer Elbeck] turned around, and he said, Why don't you get the fuck out of here.' " Id. Mr. Reiss "was completely surprised and afraid." Id. at 28-29. He asked if he could stand by an adjacent curb, where several other people were sitting. According to Mr. Reiss, Officer Elbeck replied, "No you can't fucking stand there." Id. at 29.
 
 
 6
 According to Mr. Reiss, Officer Luchetta then approached him and stood about five inches away. Because Officer Luchetta was standing in front of him, Mr. Reiss could not leave the immediate area. Id. at 30. Mr. Reiss testified that Officer Luchetta then said, "I'll bet you want to hit me, don't you, you little pussy faggot?" Id. Mr. Reiss was "astonished," and he replied, "I'm just concerned for the welfare of my friend." Id. He stated at trial that he had used the word "friend" "just as a general term." Id. at 31. Officer Luchetta then asked Mr. Reiss for the name of the drunken man. After Mr. Reiss responded that he didn't know the man's name, Officer Luchetta arrested him.
 
 
 7
 At trial, Officers Luchetta and Elbeck presented a very different account of the circumstances leading to Mr. Reiss's arrest. They testified that Mr. Reiss approached them on three separate occasions. First, as the officers walked up the roadway with the drunken man, Mr. Reiss walked towards them and started yelling that they should let the drunken man go. According to the officers, Mr. Reiss said that he would take the man back into the concert and that he was a friend of his. The officers said that they told Mr. Reiss to go back to the concert. They also told Mr. Reiss that the arrest was not his affair, that the decision to arrest had been made, and that there was nothing that he could do about it. Aple. Supp.App. at 40.
 
 
 8
 Five to ten minutes later, the officers said, Mr. Reiss approached the police van in which the drunken man was lying. Again, Mr. Reiss said that they should let the man go and that he would take him back to the concert. Again, Officer Luchetta told Mr. Reiss to go away, and Mr. Reiss responded that the drunken man was his friend and that he wanted to take care of him. Officer Luchetta testified that he then asked Mr. Reiss for the man's name, and Mr. Reiss said that he was not required to provide it. Then, Mr. Reiss walked away in the direction of a crowd and began yelling something that Officer Luchetta couldn't hear.
 
 
 9
 A few minutes later, the officers stated, Mr. Reiss reappeared and reiterated that the drunken man was his friend and that the officers should not arrest him. Officer Luchetta then told Mr. Reiss that if he refused to go back to the concert he would be arrested. Mr. Reiss took a few steps back and then stepped forward and said, "You can't do this." Id. at 62. Officer Luchetta again warned that he would take Mr. Reiss to jail if he continued. Mr. Reiss said, "Let me see you do it." Id. At that point, Officer Luchetta said, he arrested Mr. Reiss.
 
 
 10
 At trial, Officer Luchetta also presented evidence regarding the disposition of the charges against Mr. Reiss. He stated that he initially arrested Mr. Reiss for interfering with police authority, but subsequently decided to charge him with providing false information to a police officer and disorderly intoxication. An Assistant City Attorney testified that, for various reasons, her office decided to dismiss all of the charges against Mr. Reiss. As for the public intoxication charge, she stated that a municipal judge had ruled that the ordinance defining the offense was unconstitutional. As a result, she said, officers were instructed not to make arrests under this ordinance, and the City Attorney's Office did not prosecute violations of it. However, she also testified that in her opinion there was probable cause to arrest Mr. Reiss on the false information and interference charges. She explained that the dismissal of these charges was based on the high standard of proof imposed on the prosecution by the assigned municipal judge and on her office's judgment that its resources would be better spent on cases involving more egregious conduct.
 
 
 11
 After hearing this conflicting testimony, the jury was unable to reach a verdict. Officer Luchetta then filed a motion for summary judgment in support of which he asserted the defense of qualified immunity. In their briefs regarding Officer Luchetta's summary judgment motion, both parties relied on the testimony presented at trial. The district court granted Officer Luchetta's motion, concluding that, even accepting Mr. Reiss's testimony as true, a reasonable police officer could have arrested him on the false information and interference charges.
 
 II. DISCUSSION
 
 12
 We engage in de novo review of the grant of summary judgment to Officer Luchetta, applying the same standards as the district court under Fed.R.Civ.P. 56. Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Factual disputes must be resolved and inferences drawn in favor of Mr. Reiss, the nonmoving party. Bisbee v. Bey, 39 F.3d 1096, 1100 (10th Cir.1994), cert. denied, 115 S.Ct. 2577 (1995); Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir.1993).
 
 
 13
 In this case, the district court's grant of summary judgment to Officer Luchetta was based on the doctrine of qualified immunity. Qualified immunity protects public officials performing discretionary functions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known.' " Jantz v. Muci, 976 F.2d 623, 627 (10th Cir.1992) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)), cert. denied, 113 S.Ct. 2445 (1993). The qualified immunity doctrine balances the protection of constitutional and statutory rights with the protection of public officials from "undue interference in the performance of their duties as a result of baseless claims." Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir.1988). Qualified immunity leaves "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Public officials whose mistaken judgments result from unsettled law, faulty information, or exigent circumstances may thus be entitled to qualified immunity. Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir.1992)
 
 
 14
 When a public official asserts the defense of qualified immunity in a summary judgment motion, the appropriate inquiry proceeds in several stages. Hannula v. City of Lakewood, 907 F.2d 129, 130-31 (10th Cir.1990). First, the court must determine "whether plaintiff's allegations, if true, state a claim for a violation of a constitutional right that was clearly established when defendant acted." Bisbee, 39 F.3d at 1100. This means that the plaintiff must establish that "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). If the plaintiff satisfies this burden, then, in order to be entitled to summary judgment, the defendant must show that "no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." Salmon v. Schwarz, 948 F.2d 1131, 1136 (10th Cir.1991).
 
 
 15
 In this case, the right asserted by Mr. Reiss is the Fourth Amendment right to be free from an arrest without probable cause. That right was clearly established at the time of Mr. Reiss's arrest. See Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Guffey v. Wyatt, 18 F.3d 869, 872 (10th Cir.1994); Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir.1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right."). Accordingly, in resolving the qualified immunity issue, we must proceed to a more particular inquiry: based on the facts presented to the district court, we must determine whether, at the time that Officer Luchetta arrested Mr. Reiss, a reasonable police officer could have concluded that there was probable cause to make the arrest. See Hunter v. Bryant, 502 U.S. 224, 228 (1991). That inquiry requires an examination of the concept of probable cause, the elements of the offenses for which Mr. Reiss was arrested and charged, and the evidence in the record regarding Mr. Reiss's conduct on the evening of August 23, 1991.
 
 
 16
 "Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." United States v. Maher, 919 F.2d 1482, 1485 (10th Cir.1990) (citing Brinegar v. United States, 38 U.S. 160, 175-76 (1949)); see also Jones v. City & County of Denver, 854 F.2d 1206, 1210 (10th Cir.1988). Because the existence of probable cause depends upon the reasonableness of an officer's conduct under particular circumstances, claims challenging the bases for arrests usually present factual questions that must be resolved by a jury. See DeLoach v. Bevers, 922 F.2d 618, 622 (10th Cir.1990) ("We have long recognized that it is a jury question in a civil rights suit whether an officer had probable cause to arrest."), cert. denied, 502 U.S. 814 (1991).
 
 
 17
 Similarly, when a police officer asserts that he is entitled to qualified immunity from a claim that he has made an arrest without probable cause, factual questions often arise that require resolution by a jury. For example, in Guffey, the plaintiff alleged that a police officer lacked probable cause to arrest him for obstructing the officer in the discharge of his duties. In affirming the district court's denial of the police officer's summary judgment motion based on qualified immunity, this Court noted the conflicting testimony presented by the plaintiff and the police officer regarding their conversation before the arrest. Guffey, 18 F.3d at 873. Numerous courts have followed similar reasoning, concluding that controverted factual issues regarding an arrestee's conduct sufficed to defeat a defendant police officer's motion for summary judgment on qualified immunity grounds. See, e.g., Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1305-06 (5th Cir.1995); Cook v. Sheldon, 41 F.3d 73, 77-79 (2d Cir.1994); Arnott v. Mataya, 995 F.2d 121, 123 (8th Cir.1993) ("Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law."); Gainor v. Rogers, 973 F.2d 1379, 1385 (8th Cir.1992) ("The cases are legion in this and other circuits which establish that where there are genuine issues of material fact surrounding an arrestee's conduct it is impossible for the court to determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law."); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir.1991), cert. denied, 505 U.S. 1206 (1992); Santiago v. Fenton, 891 F.2d 373, 384 (1st Cir.1989) ("The jurors could have believed plaintiff's version of what occurred, and as a result could have found no probable cause for the arrest."); Hansen v. Black, 885 F.2d 642, 644 (9th Cir.1989).
 
 
 18
 In this case, the district court held that, even accepting Mr. Reiss's account of the events leading up to his arrest, a reasonable officer could have concluded that probable cause existed to arrest him for providing false information and for interfering with a police investigation. Mr. Reiss challenges this conclusion, and in order to resolve the issue, we must examine the applicable municipal ordinances.
 
 
 19
 At the time of Mr. Reiss's arrest, section 38-40 of the Denver Municipal Code prohibited the giving of false information to officers conducting investigations:
 
 False information during investigations
 
 20
 It shall be unlawful for any person knowingly and willfully to give false information to an officer or employee of the city when such officer or employee is acting in their official capacity, concerning the identity of any person participating in, connected with, or responsible for, or concerning the manner of the commission of, any act, when, as part of their official duties or employment, such officer or employee is investigating:
 
 
 21
 (1) The legality of such act; or
 
 
 22
 (2) The identity of the person participating in, connected with, or responsible for the commission of such act.
 
 
 23
 See Aplt.App. at 135 (quoting Denver Municipal Code 338-40).
 
 
 24
 Section 38-31 of the Denver Municipal Code addressed interference with police officers' performance of their duties:
 
 Interference with police authority
 
 25
 (a) It shall be unlawful for any person, in any way, to interfere with or hinder any police officer, any member of the police department, or any person duly empowered with police authority, while such officer, member, or person duly empowered with police authority is discharging or apparently discharging their duties.
 
 
 26
 (b) It shall be unlawful for any person, in any way, to interfere with or hinder any deputy sheriff, prison steward or deputy warden while any such officials are discharging or apparently discharging their duties.
 
 
 27
 (c) It shall be unlawful for any person to fail to obey a lawful order of a police officer if such failure interferes with or hinders such police officer in the discharge of his official duties. It is an affirmative defense to this subsection that the failure to obey did not interfere with or hinder the police officers.
 
 
 28
 See id. at 136 (quoting Denver Municipal Code 38-31).
 
 
 29
 In granting summary judgment to Officer Luchetta on qualified immunity grounds, the district court concluded that a reasonable officer could have determined that there was probable cause to support Mr. Reiss's arrest under both ordinances. Regarding the false information charge, the court concluded that one reasonable interpretation of Mr. Reiss's statement that the drunken man was his "friend" was that he knew his name. A reasonable officer, the court said, could have concluded that this statement constituted a violation of the municipal ordinance. As for the interference charge, the court stated that it was undisputed that the officers asked Mr. Reiss to leave the area around the van and go back into the concert. Because Mr. Reiss did not leave at the officers' request, the court held, a reasonable officer properly could have arrested him under the interference ordinance.
 
 
 30
 Upon review of the record, we conclude that the district court erred in its determination regarding the false information charge. Unlike the district court, we believe that it is significant that, accepting Mr. Reiss's testimony as true, the statement for which he was arrested--that the drunken man was his friend--was made in response to Officer Luchetta's offensive and insulting statement, "I bet you want to hit me, don't you, you little pussy faggot." Moreover, according to Mr. Reiss, the statement was made in a threatening manner, as Officer Luchetta stood five inches in front of him. We do not think that "a man of reasonable caution," Maher, 919 F.2d at 1485, could fairly interpret the use of the word "friend" in response to such a statement as knowingly and willfully providing false information in the course of an investigation.
 
 
 31
 Significantly, when Officer Luchetta did ask a specific question about the drunken man, Mr. Reiss gave a truthful response: he said that he did not know the man's name. In this regard, Mr. Reiss's version of the events preceding his arrest contrasts markedly with the circumstances in which convictions under analogous statutes and ordinances have been affirmed. See, e.g., United States v. Stenzel, 49 F.3d 658, 662 (10th Cir.1995) (affirming conviction under New Mexico statute regarding concealing identity when officers made multiple requests that the defendant provide identification and the defendant refused), cert. denied, 116 S.Ct. 123 (1995); State v. Latimer, 687 P.2d 648, 653 (Kan.Ct.App.1984) (affirming conviction under obstruction of justice statute when the "[defendant's] false identity was given in response to a direct question by a police officer during the course of a criminal investigation"). Accordingly, we conclude that, based on Mr. Reiss's version of events, a reasonable police officer could not have determined that there was probable cause to arrest him for violating the false information ordinance.
 
 
 32
 As to the interference charge, it appears that the district court improperly relied upon the disputed testimony of Officer Luchetta and Officer Elbeck. The court stated that it was undisputed that the officers asked Mr. Reiss to leave the area around the van and return to the concert and that Mr. Reiss did not leave when asked. However, as noted above, Mr. Reiss testified that immediately after Officer Elbeck told him to leave the area, Officer Luchetta approached him, made the offensive remark, and asked him the name of the drunken man. Mr. Reiss said that he could not leave the area because Officer Luchetta was blocking his path. In light of this testimony, there is evidence in the record to support Mr. Reiss's contention that a reasonable officer could not have found probable cause to arrest Mr. Reiss for violating the interference ordinance.
 
 
 33
 We therefore conclude that Officer Luchetta is not entitled to summary judgment on the basis of qualified immunity from Mr. Reiss's false arrest claim.[3]
 
 III. CONCLUSION
 
 34
 The Supreme Court has noted that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." City of Houston, Tex. v. Hill, 482 U.S. 451, 462-63 (1987). Although there is conflicting testimony regarding his conduct before his arrest, Mr. Reiss has presented evidence that he engaged in no more than an expression of concern about police action and that a reasonable police officer could not have concluded that there was probable cause to arrest him for violating the applicable municipal ordinances.
 
 
 35
 Accordingly, the district court's grant of summary judgment to Officer Luchetta on Mr. Reiss's false arrest claim is REVERSED, and the case is REMANDED for proceedings consistent with this opinion.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [3]
 Officer Luchetta may still raise the qualified immunity defense at trial and after--when the applicable factual disputes have been resolved. See Dixon v. Richer, 922 F.2d 1456, 1463 (10th Cir.1991)