# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-1967

_____

|  |  |  |
|---|---|---|
| Weldon King; Wesley King; Billy Williams; Lepoleon Sample; Daryl Aikman; A. L. Travis; Barry Spurgers; Donald Berry; Mary Berry; Charles Cagle, individually, doing business as B&C Auto Sales; Herman Dixon; Larry Spakes; Dustin King; Bubba Holland, individually, doing business as Bubba's Auto Sales; Larry Barbee; Mike Holmes, | * * * * * * * * * * * * | Appeal from the United States District Court for the Eastern District of Arkansas. |
| Appellees, | * * | |
| v. | * * | |
| Mike Fletcher and Barry Roy, individually, | * * * | |
| Appellants. | * | |

_____

Submitted: November 6, 2002
Filed: February 11, 2003

_____

Before HANSEN, Chief Judge, BEAM and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

As part of an investigation into "chop shops" that were allegedly reselling stolen vehicles and vehicle parts, police inspected the vehicle identification numbers (VINs) of various salvaged vehicles that had been restored and resold. They seized the vehicles without warrants, alleging that each vehicle's public VIN (stamped on a metal plate on the dashboard and on stickers located throughout the vehicle's interior) did not match its confidential VIN (stamped on the vehicle's frame, engine, and transmission), or that some of each vehicle's VINs were missing. The owners of the seized vehicles and the rebuilders/dealers who had sold the vehicles to them sued Mike Fletcher and Barry Roy of the Arkansas State Police Department under 42 U.S.C. § 1983 for Fourth and Fourteenth Amendment violations and, in some instances, for damaging or losing the seized vehicles.[1]

Fletcher and Roy moved for summary judgment on the basis of qualified immunity. After reviewing plaintiffs' response, the district court[2] denied the summary judgment motion, concluding that there were genuine issues of material fact. Fletcher and Roy appeal. For the reasons discussed below, we affirm.

I.

We review de novo the district court's denial of summary judgment, and we may affirm on any basis supported by the record. See Wilson v. Spain, 209 F.3d 713, 716 (8th Cir. 2000). In determining if there is any genuine issue of material fact as to whether Appellants' actions violated Appellees' rights, we view the evidence in the light most favorable to Appellees. See id.

---

[1] Plaintiffs also sued several private citizens who are not parties to this appeal, and their lawsuit also raised claims of conversion, conspiracy, and slander under Arkansas law that are not implicated in this appeal.

[2] The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

2

Appellants present three arguments why they are entitled to qualified immunity: each of the vehicle owners consented to having his vehicle's VINs inspected, the police officers reasonably believed that they had probable cause to seize each vehicle because the VINs were missing or did not match, and there was no constitutional violation because each of the vehicle owners had an adequate post-deprivation remedy under Arkansas law. Appellees respond that there are genuine issues of material fact as to each of these issues. We address these matters seriatim.

First, Appellants argue that their inspections of the vehicles' VINs did not violate Appellees' rights because each vehicle owner consented. Appellants' premise, that the Fourth Amendment protection against unreasonable searches does not apply if the property owner voluntarily consents to the search, is correct. See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). However, the summary judgment record establishes genuine issues of material fact as to whether each vehicle owner consented and whether those who consented did so voluntarily.

We note three of the most prominent examples. Bubba Holland's affidavit establishes a dispute as to whether he consented at all: he swore that Fletcher and other officers appeared at his used car dealership with a tow truck and, without asking Holland's permission, they lifted up trucks to inspect their confidential VINs. (J.A. at 437.) Charles Cagle's and Billy Williams's affidavits establish a dispute as to whether their consent was voluntary. Cagle averred that he complied with Fletcher's request that he bring his pickup truck in to be inspected because Fletcher threatened that he would have the truck towed in for inspection if Cagle did not comply. (Id. at 430-31.) Williams swore that he allowed his pickup truck to be inspected because Fletcher deceived him with the lie that the truck's VIN had been found written on a piece of paper in a car thief's pocket. (Id. at 102-05.)

Second, Appellants argue that they reasonably believed they had probable cause to seize each vehicle without a warrant because the vehicles' VINs were

3

missing or did not match. They correctly note that it is a misdemeanor in Arkansas to remove or alter VINs fraudulently, see Ark. Code Ann. § 27-14-2211 (Michie 1994), and that the Fifth Circuit has held that the removal of VIN plates may establish probable cause to believe that a vehicle has been stolen, see United States v. Forrest, 620 F.2d 446, 455 (5th Cir. 1980).[3] However, the summary judgment record establishes genuine issues of material fact as to whether each vehicle had missing or mismatched VINs and, as to the vehicles that did have missing or mismatched VINs, whether Appellants' belief that probable cause existed was reasonable under the circumstances.

Pursuant to the Arkansas Rules of Criminal Procedure, after seizing each vehicle, Fletcher filed in state court a notice-of-seizure form describing the circumstances of the seizure. In two instances, these forms contradict Appellants' position in the instant appeal that each vehicle had missing or mismatched VINs. The notice-of-seizure form described Barry Spurgers's truck as having been "identified as stolen," but made no mention of missing or mismatched VINs. (J.A. at 403.) Regarding Donald and Mary Berry's truck, the notice-of-seizure form stated that the truck was "[r]eported [s]tolen" and had a "fictitious VIN" but did not explain how the VIN was determined to be fictitious given that the public and confidential VINs apparently matched, or how the Berrys' truck was determined to be the stolen truck given the allegedly fictitious VIN. (Id. at 116.)

---

[3] Appellants' reliance on Forrest is of dubious persuasive value given that the Fifth Circuit subsequently distinguished it in a case where, like the instant case, there was an innocent explanation advanced for a vehicle's altered or missing VINs. See Bigford v. Taylor, 834 F.2d 1213, 1219 (5th Cir.) (apparent alterations to VIN on door-jamb and apparently missing VIN on engine did not establish probable cause to seize truck; given that truck was obviously old and had been subjected to heavy wear, conclusion that VINs had rusted or fallen off was at least as likely as conclusion that truck had been stolen or tampered with), cert. denied, 488 U.S. 822 and 851 (1988).

The observations Fletcher made in the notice-of-seizure forms for two other trucks are controverted by the affidavits of the trucks' owners. The notice-of-seizure form reported that Weldon King's truck was seized because the VINs had been ground off the engine and transmission. (Id. at 402.) However, King swore in his affidavit that he inspected the truck and found no grind marks. (Id. at 96-97.) Regarding Lepoleon Sample's truck, Fletcher commented on the notice-of-seizure form that the VINs had been ground off the motor and transmission. (Id. at 405.) However, Sample averred in his affidavit that when he inspected the vehicle, there were no grind marks on either part. (Id. at 100-01.)

As to the vehicles that did have missing or mismatched VINs, there is a genuine issue of material fact as to whether Appellants reasonably concluded without further investigation that the missing or mismatched VINs established probable cause, given that Appellants knew the vehicles were rebuilt salvage and were told that replacement parts will either lack VINs or will not match the public VIN. We note two instances in which Appellees provided innocent explanations of why their vehicles had missing or mismatched VINs, and the police ignored them. In his affidavit, plaintiff Williams--himself a police officer with seventeen years of experience--averred that Fletcher ignored him when he told him that his truck had a replacement engine and that replacement engines do not have VINs. (Id. at 102-05.) Holland swore in his affidavit that when police told him that they had seized his three trucks because the confidential VINs on the engines and transmissions did not match the public VINs, he showed them documentation proving that the engines and transmissions were not stolen, but they ignored him. (Id. at 437.)

Substantiating the statements they made to police at the time of the seizures, Appellees submitted in connection with the instant litigation the affidavits of ten experienced mechanics and three experienced police officers attesting that replacement engines and transmissions do not have VINs, that a vehicle's replacement

5

parts will not have matching VINs, and that even some new engines and transmissions mistakenly leave the factory without VINs. (Id. at 151-59, 375-76.)

These circumstances resemble those of United States v. Maher, 919 F.2d 1482 (10th Cir. 1990). In that case, police were suspicious that a trailer had been stolen. Although a trailer's VIN is typically located on its tongue, and this trailer's tongue did not bear a VIN, it was apparent to police that the tongue was a replacement part that ordinarily would not have a VIN. The court held that without further facts, no reasonable police officer would have found the absence of the VIN, standing alone, sufficient to establish probable cause. See id. at 1486. The same is true here. Appellants knew that the vehicles were rebuilt salvage and were told that the use of replacement parts could provide an innocent explanation for the missing or mismatched VINs. Under the circumstances revealed by the limited summary judgment record in front of us, the missing or mismatched VINs "provided at most a basis for further investigation," not probable cause to seize the vehicles. See Bigford, 834 F.2d at 1219.

Third, Appellants argue that there was no constitutional violation because each of the vehicle owners had an adequate postdeprivation remedy under Arkansas law. Appellants' premise, that they are protected by qualified immunity if Arkansas law provides an adequate postdeprivation remedy, is correct. See Walden v. Carmack, 156 F.3d 861, 874 (8th Cir. 1998). However, the summary judgment record establishes a genuine issue of material fact as to the adequacy of the remedy in this case. We have previously held that a state remedy is inadequate if it requires the owner of the seized property to go to unreasonable lengths to recover his property. See Lathon v. City of St. Louis, 242 F.3d 841, 844 (8th Cir. 2001) (finding Missouri replevin statute to be inadequate remedy under facts of case).

In the instant case, the appellees who successfully sued in state court to recover their vehicles say that they were without the vehicles for between six and nine

months, and that some of them had to purchase replacement vehicles in the interim. Daryl Aikman's truck was returned with $1885.13 worth of damage, police substantially diminished the resale or trade-in value of the Berrys' truck by removing its VINs, Cagle's truck was returned with a dead battery and missing parts, and Williams' truck was returned with such extensive damage--including the removal of the engine and transmission and the disassembly of the dashboard and door panels-- that he ultimately sold it for $8000 less than he had paid for it. Additionally, several appellees who sued in state court say that they were unsuccessful in recovering their vehicles: Dustin King could not recover his truck because the police had sold it to a salvage yard, Weldon King could not enforce his state court restoration order because his truck had disappeared after the police seized it, and Butch Travis could not enforce his state court restoration order because of a typographical error. (J.A. at 32-34, 92, 97, 103-05, 169-71, 185, 310, 430-31, 434-36.)

Finally, in their reply brief, Appellants argue that Roy should be dismissed from the lawsuit because Appellees have not demonstrated his involvement. We are entitled to disregard this argument because Appellants presented it for the first time in their reply brief. See Mahaney v. Warren County, 206 F.3d 770, 771 n.2 (8th Cir. 2000). Moreover, Weldon King testified in his deposition that Roy was at least involved in the seizure of Spurgers's vehicle. (J.A. at 276.)

## II.

Because the summary judgment record establishes genuine issues of material fact regarding Appellants' entitlement to qualified immunity, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.